641 So.2d 696 (1994)
STATE of Louisiana
v.
Ralph STERLING.
No. 94-K-0794.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1994.
Harry F. Connick, Dist. Atty., Philip Spence, Asst. Dist. Atty., Paul C. Fleming, Jr., New Orleans, for relator.
Kevin Boshea, Regan, Manasseh & Boshea, New Orleans, for respondent.
Before BARRY, BYRNES, and ARMSTRONG, JJ.
BYRNES, Judge.
ON APPLICATION FOR WRITS
The state requests a review of the trial court's ruling granting defendant's motion to *697 suppress evidence where the defendant was charged with possession with intent to distribute cocaine. We reverse and remand.
At the motion hearing Officer Eddie Selby testified that he received information from a reliable confidential informant that a person by the name of Ralph Sterling was supplying drugs on a wholesale level in the Iberville Housing Project. The informant related that Sterling kept the bulk of his supply of drugs at his mother's residence at 2755 Toulouse Street, then transported them in the late afternoon to 1314 Bienville Street, his girlfriend's apartment, which defendant used as a distribution outlet to drug retailers. Officer Selby testified that a surveillance of both residences was established on May 18, 1994. Selby stationed himself at the Toulouse Street residence. At approximately 4:10 p.m., he saw a man, who was later identified as Ralph Sterling, leave the residence. Carrying a brown paper bag, the man got into a 1982 tan Crown Victoria. The officer followed Sterling into the project where he stopped near 1314 Bienville Street. Sterling got out of his vehicle, looked around, reached back into the vehicle, took the paper bag, walked to 1314 Bienville, opened the front door with a key, entered the residence, placed the brown paper bag inside to the left of the front door, and then went back to his vehicle.
Based on these observations, the police officers stopped Ralph Sterling and placed him "under investigation" although he was not free to leave. When asked if he stayed at the residence, Sterling replied that he did not. After the officers told him they saw him enter with a key, Sterling said that he stayed there with his girlfriend. Testifying that the location was known to be a high drug trafficking area of the Iberville Project, and that the police thought that someone at the residence might dispose of the contraband or take it away, Officer Selby stated that the officers used the key to go inside the residence at 1314 Bienville, recovered the bag just inside the door, and discovered that it contained what appeared to be crack cocaine.
The officers then formally arrested Sterling and secured the residence. Officer Selby went back to police headquarters and prepared search warrant affidavits for 1314 Bienville Street and 2755 Toulouse Street. The ensuing searches resulted in the recovery of approximately $19,000 from the Toulouse Street residence. The search of 1314 Bienville resulted in the seizure of a small amount of cash, four weapons, and additional cocaine.[1]
The applications for search warrants state that prior to the investigatory stop, the police ran the defendant's record on the computer and found that the defendant had prior narcotic arrests. The applications further provide the information supported by Officer Selby's testimony, including the fact that the defendant "denied any knowledge of the location" when asked about 1314 Bienville Street when the police made the investigatory stop and questioned the defendant.
Officer Selby testified that the confidential informant did not indicate what type of container Sterling used to transport narcotics. Also, the officer stated that the returns on the search warrant were in error in that they showed that the searches occurred at 4:20 p.m., because the warrants were not signed until 6:00 p.m. It was at approximately 4:20 p.m. that Officer Selby first entered the Bienville Street residence.
On June 21, 1993 in case number 364-095 the State filed a bill of information charging the defendant Ralph Sterling with possession of cocaine with the intent to distribute. In case number 364-912 a bill of information was filed on August 4, 1993 in which the defendant was charged with being a convicted felon in possession of a firearm. On November 18, 1993 testimony was taken from Officer Eddie Selby regarding the defense motion to suppress the physical evidence. On March 4, 1994 the trial court heard additional argument and then granted the defendant's motions to suppress. The *698 state applied for writs to review the ruling of the trial court.
On the motion to suppress the evidence, the following issues are presented: (1) whether the officers had reasonable suspicion of criminal activity to justify an investigatory stop; (2) whether the officers had probable cause to detain the defendant and to seize the brown paper bag from inside the residence at 1314 Bienville without a search warrant; and (3) whether probable cause existed for issuance of the search warrants for 1314 Bienville and 2755 Toulouse Street, and the evidence was properly seized.
Initially the state argues that the officers had sufficient reason for an investigatory stop.
LSA-C.Cr.P. art. 215.1(A) provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
In State v. Johnson, 557 So.2d 1030, 1033 (La.App. 4th Cir.1990), this court noted:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights....
See also Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992); State v. Albert, 553 So.2d 967 (La.App. 4th Cir.1989).
The defendant refers to State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993), in which the defendant in that case turned and immediately walked away when the defendant saw the officers on a routine foot patrol in the Iberville Project. The officer saw the defendant "go into his waistband area with both hands." Without "additional suspicious elements" such as factors ranging "from tips to open displays of contraband," this court concluded that, "no other compelling circumstances existed to justify the subsequent detainment and search." This court held that the police must articulate specific facts on which a hunch or suspicion for an investigative stop are based. This court noted that the officer's seizure of a small pipe containing cocaine residue within the waistband of the defendant was unreasonable based on the belief that the small pipe was a gun, without additional information.
The defendant also refers to State v. Alexander, 632 So.2d 853 (La.App. 4th Cir.1994), where a police surveillance supported a tip by a reliable informant establishing that the defendant in that case frequented two locations, drove a green Plymouth Fury with a specific license number. An unidentified man shouted, "police, police". That defendant walked up to the vehicle, looked up and down the street, opened the trunk and placed objects in a brown paper bag. He closed the trunk and walked into the front yard at one of the locations and placed the brown paper bag on the side of the porch. This court found that no evidence was introduced pertaining to the informant's reliability, stating:
The police apparently had no knowledge or past experience with Alexander, nor does the evidence indicate that the police considered South Saratoga Street as an area of high crime.
Alexander, supra, 632 So.2d at 855.
Furthermore, in Alexander, based on the determination that the mere assertion by police that the informant is reliable without additional supporting information, is insufficient to establish the informant's credibility, this court did not find probable cause to arrest the defendant, but did not address the legality of an investigatory stop.
In the present case, Officer Selby testified that the Bienville Street location was known to be a high drug trafficking area. Further, according to the affidavits[2] in support of the search warrants, Officer Selby spoke *699 with a reliable confidential informant "whose information in the past had led to the arrests of those persons engaged in illegal trafficking of Narcotics within the Parish of Orleans." The informant provided information that Ralph Sterling, "was said to be driving a 1982 Tan Crown Victoria (La. Lic. # 736A518)". Also, the affidavits report information from the confidential informant that Sterling would transport the crack cocaine in the late afternoon, and that the informant obtained his knowledge from personally making buys "for self consumption" within the past seventy-two hours. The suspicious behavior of the defendant was articulated by the police in the description of the manner in which the defendant got out of the car, looked back and forth before reaching into the vehicle, and then retrieving the brown paper bag. Additionally, "Detective Selby checked Ralph Sterling through the NCIC computer and found that he (Ralph Sterling) had been arrested in the past for Narcotics violations." Based on the totality of circumstances the police had reasonable suspicion to make an investigatory stop and question the defendant.[3]
The second issue is whether the officers stated reasons for probable cause and exigent circumstances to open the door and seize the brown paper bag in the entrance of 1314 Bienville without previously obtaining a search warrant.
In State v. Johnson, 617 So.2d 18, 20 (La. App. 4th Cir.1993), this court stated:
... Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Constitution, Amendment 4; Louisiana Constitution Article 1 § 5; C.Cr.P. Article 162; State v. Brady, 585 So.2d 524 (La.1991). A recognized exception to the warrant requirement for entry into a building is a quick search of the premises to determine the presence of persons in need, the presence of a perpetrator who might still remain on the premises, or to prevent the destruction of evidence. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); United States v. Rubin, 474 F.2d 262 (3rd Cir. 1973) cert. denied 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir. 1988), writs denied, 531 So.2d 764 (1988).
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1 § 5.
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that without those exceptional circumstances would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence.

State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
* * *
*700 In United States v. Rubin, 474 F.2d at 268-269, the court listed circumstances which might lead police officers to reasonably conclude that evidence would be destroyed or removed before they could secure a search warrant:
1) The degree of urgency involved and the amount of time necessary to obtain a warrant;
2) A reasonable belief that the contraband is about to be removed;
3) The possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;
4) Information indicating the possessors of the contraband were aware that the police were on their trail; and
5) The ready destruction of the contraband and the knowledge and efforts to dispose of narcotics and escape are characteristic behavior of persons engaged in narcotics traffic.
In the above case of State v. Johnson, 617 So.2d 18 (La.App. 4th Cir.1993), the officers received information that drugs were being sold from a certain address. They established a surveillance and observed what appeared to be drug sales by the defendant in front of the address and then from a nearby car where the defendant's companion was stationed. The officers arrested the companion at the car and then secured the house while awaiting the issuance of a warrant for the house. On appeal of the defendant's conviction, this court found that the officers had probable cause to believe that the house contained drugs, and the arrest of the defendant's companion, of which the defendant would be aware, allowed the officers to enter the house to secure it.
In the present case the police provided a legitimate basis for exigent circumstances, assuming probable cause existed. Officer Selby testified that considering that the officers were in a high drug trafficking area and considering that the tip included information that the Bienville residence belonged to the defendant's girlfriend, the police thought a third party easily could dispose of contraband or take it away, and exigent circumstances existed for seizure of the brown paper bag.
Further, the state argues that the evidence was legally seized under the doctrine of "inevitable discovery". Illegal entry does not automatically mean the contraband should be suppressed. Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As noted in U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), there are three exceptions to Wong Sun's exclusionary rule: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Guy, 575 So.2d 429 (La.App. 4th Cir.), writ denied 578 So.2d 930 (La.1991). The "inevitable discovery" doctrine provides that evidence found as a result of a violation of a defendant's constitutional rights is admissible if the state can show, by a preponderance of the evidence, that the evidence ultimately would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); State v. Nelson, 459 So.2d 510 (La.1984), certiorari denied 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985).
To justify a warrantless search under exigent circumstances and the inevitable discovery doctrine, the state must show that probable cause for the search existed. The defendant contends that the police did not have sufficient exigent circumstances to justify seizure of the brown paper bag from inside the entrance of 1314 Bienville. The probable cause determination must be based upon the facts and circumstances known to the officers prior to the seizure of the brown paper bag and its contents. State v. Knapper, 626 So.2d 395 (La.App. 4th Cir.1993), writ denied, 630 So.2d 798 (La.1994).
Ultimately, the issue is this case is whether Officer Selby had probable cause to believe that the brown paper bag contained narcotics. If he did, he had grounds to arrest the defendant and then enter the house without a warrant to seize the bag so that any evidence could not be destroyed before a warrant could be obtained. Further, if there was probable cause to believe that the defendant had placed drugs contained in the paper bag inside 1314 Bienville *701 Street, a valid search warrant would have been issued and the contraband would inevitably have been discovered.
In State v. James, 581 So.2d 349, 353-354 (La.App. 4th Cir.1991), this Court set forth the standard of review of the issuance of a search warrant:
C.Cr.P. art. 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts and establishing the cause for the issuance of the warrant." The Louisiana Supreme Court has held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence of contraband may be found at the place to be searched.

State v. Duncan, 420 So.2d 1105 (La.1982). See also State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ denied 531 So.2d 764 (La.1988); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986). The facts which form the basis for the probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan; Roebuck. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482, (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).
In its review of a magistrate's finding of probable cause, the appellate court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-239, 103 S.Ct. 2317 [2332, 76 L.Ed.2d 527] (1983). (citations omitted) See also Manso; Roebuck.

In the present case the defendant refers to State v. Talbert, 449 So.2d 446 (La.1984), in which the Louisiana Supreme Court did not find exigent circumstances justifying a warrantless search. In Talbert, the police observed that defendant in possession of an object wrapped in brown paper. Talbert was standing in the doorway of an apartment with an unidentified man. Talbert looked surprised when he saw officers in a police car. He turned, ran into the house, and threw the object wrapped in brown paper inside as he entered the house. The Supreme Court held that Talbert's surprised look and retreat into the apartment were the only facts in the record upon which the officers could have determined that probable cause to arrest existed. The Supreme Court noted that "the officers were not there because of a tip, nor did they have any information indicating that a crime was being committed in the area."
In the present case, when the police questioned the defendant pursuant to a proper investigatory stop, Sterling denied having any knowledge of 1314 Bienville. After the police told him that they saw him enter that address with a key, the defendant changed his story and related that his girlfriend lived there. Together with the information provided by the reliable confidential informant as previously discussed in detail, which was substantiated by the independent surveillance of the police; along with the officers' observation of the manner in which the defendant looked back and forth before reaching into the vehicle to retrieve the brown paper bag, as well as the facts that the location was a known high drug trafficking area, and the computer check of the defendant showed his arrests for prior narcotic violations; the additional circumstance that the defendant's initial statement was contradicted by the officers' surveillance, and then was changed by the defendant, provided probable cause for the police to believe *702 that the defendant was engaged in illegal drug activity under the totality of the circumstances. Together with the other elements, the defendant's fabricated statement provided information sufficient to support a reasonable belief that the brown paper bag contained contraband.
Considering that the facts were sufficient to establish probable cause that there were drugs in the brown paper bag in the 1314 Bienville residence under the totality of the circumstances and that the officers would have received a search warrant for the brown paper bag based on probable cause; considering that exigent circumstances existed for the limited search just inside the doorway of 1314 Bienville Street; and given the detailed information within the affidavits as previously discussed, the police officers provided a substantial basis for the magistrate to determine that probable cause existed, and subsequently the magistrate issued valid search warrants for 2755 Toulouse and 1314 Bienville. All of the evidence was properly seized and is admissible.
Accordingly, the ruling of the trial court is reversed. Defendant's motion to suppress is denied, and the case is remanded to the trial court.
REVERSED AND REMANDED.
NOTES
[1] The return on the search warrant for Bienville Street shows that one of the items seized was a brown paper bag containing "numerous rock like substance". The testimony of Officer Selby reveals that the brown paper bag was not found or seized pursuant to a search warrant. The return also shows that additional cocaine was found in the residence on Bienville Street.
[2] Although two affidavits were prepared to support separate warrants for each residence, they are identical.
[3] The defendant also refers to State v. Britton, 621 So.2d 890 (La.App. 4th Cir.1993), writ granted 629 So.2d 373 (La.1993), and judgment reversed, 633 So.2d 1208 (La.1994), in which Britton was with a group of men kneeling on the ground outside a gas station. As the police approached, the defendant stood up, quickly walked away from the group and entered the gas station store. Following Britton into the store, but not approaching him, the police saw Britton remove a yellow bag and place it on a display. The defendant in the present case notes that without additional facts, this court found that Britton's right to privacy was violated, and the police did not have reasonable suspicion to justify Britton's detention. However, the Louisiana Supreme Court reversed, stating:

... The police had the same right as any citizen to follow the defendant into the store, and they did not forcibly detain him, or make a show of their authority signalling that some form of official detention was imminent, until after he discarded the packet of cocaine.... Property abandoned before any unlawful intrusion into a citizen's right of freedom from governmental interference may be lawfully seized by the police....
State v. Britton, 633 So.2d at 1209.
Because no investigatory stop was pursued prior to Britton's abandonment of the cocaine, the facts do not apply to the present case where the initial issue is whether the police made a proper investigatory stop.