764 So.2d 1104 (2000)
STATE of Louisiana
v.
Ernest N. THOMAS.
No. 99-KA-2219.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
*1106 Laura Pavy, Louisiana Appellate Project, New Orleans, Counsel for Defendant.
Harry F. Connick, District Attorney, Cate L. Bartholomew, Assistant District Attorney, New Orleans, Counsel for Plaintiff.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge MIRIAM G. WALTZER).
WALTZER, Judge.
Ernest Thomas appeals his conviction and sentence for possession with intent to distribute cocaine and possession of a dangerous weapon while in possession of a controlled dangerous substance.

STATEMENT OF THE CASE
Defendant was charged by bill of information on 9 April 1998 with both possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A), and possession of a firearm while in possession of a controlled dangerous substance, a violation of LSA-R.S. 14:95(E). Defendant pled not guilty at his arraignment. The trial court denied defendant's motion to suppress on 24 September 1998. A twelve-person jury found defendant guilty as charged of the two counts on 27 October 1998. On 22 January 1999, defendant was sentenced to eight years at hard labor on each count, without the benefit of parole, probation, or suspension of sentence, with credit for time served, and with the sentences to run concurrently.

FACTS
New Orleans Police Sergeant Stephen Gaudet testified that on 25 March 1998, at approximately 5:30 p.m., he stopped defendant when defendant left his car. Officer Hite testified at the motion to suppress hearing that Sgt. Gaudet had received information from a reliable confidential informant who had previously provided *1107 information leading to the arrests and convictions of persons involved in illicit narcotics trafficking in New Orleans. The informant stated that Ernest Thomas would be selling cocaine from the location of Clio and Baronne Streets and that he was driving a white Pontiac LeMans with a particular license plate number. The officers proceeded to the area but did not see the car described by the informant. They drove around the area and spotted the vehicle described by the informant at Clio and Baronne Streets. Sgt. Gaudet recognized defendant from previous narcotics investigations; and the officers turned on their flashing lights and stopped defendant's vehicle. Moreover, Officer Hite testified on cross-examination at the motion to suppress hearing that the defendant failed to completely stop at a stop sign.
Sgt. Gaudet conducted a pat-down search for his safety and discovered a loaded.22 caliber Concord revolver in the left side of defendant's waistband. Sgt. Gaudet placed defendant under arrest for the weapon and, during a search incidental to that arrest, found nine pieces of crack cocaine in his right front pants pocket. A vinyl zipper-bag found on the front seat of defendant's vehicle contained five hundred dollars and more cocaine.
Sgt. Gaudet testified on cross examination that he, Officer Hite, along with a third officer, together in a marked police unit, activated their lights and pulled defendant's car over near Baronne and Clio Streets. Defendant left his car and was walking away when he was "grabbed" by Sgt. Gaudet. When Officer Hite retrieved the vinyl bag from the front seat, it was open-unzippered.
It was stipulated that substances contained in two plastic bags introduced into evidence tested positive for cocaine.
New Orleans Police Officer Eric Hite testified that he, Sgt. Gaudet, and Officer Kathleen Savatiel, pulled defendant's car over in the 1700 block of Clio Street. He was present when Sgt. Gaudet found a revolver on defendant's person and saw Sgt. Gaudet perform a search incidental to defendant's arrest and discover rocks of crack cocaine on defendant's person. Officer Hite looked into defendant's vehicle and saw a zipper pouch lying on the passenger seat, with a large amount of money in it. He retrieved the pouch for safekeeping and noticed more cocaine in the pouch. Officer Hite recovered registration papers from the glove compartment showing that the vehicle was registered in defendant's name. Officer Hite admitted on cross-examination that he did not see defendant engage in any type of illegal drug transaction.
New Orleans Police Officer Kathleen Savatiel testified that she was with the two other officers during the stop. She said no one else was traveling with defendant and that defendant attempted to walk away from his vehicle. Officer Savatiel said she did not know what defendant was doing before he was stopped.

ERRORS PATENT
A review of the record reveals three errors patent. In sentencing defendant on the conviction for possession with intent to distribute cocaine, the trial court ordered that the sentence be served without benefit of parole, probation or suspension of sentence. LSA-R.S. 40:967(B)(4)(b) provides that only the first five years of the sentence be without the benefit of parole, probation or suspension of sentence. However, the disposition of the third error patent renders this error moot.
The second error patent concerns the trial court's failure to impose a mandatory fine of not more than ten thousand dollars as part of defendant's sentence pursuant to LSA-R.S. 14:95.1(E). The failure to impose such a mandatory fine is an error patent. State v. Shortridge, 98-2060, p. 1 (La.App. 4 Cir. 12/22/99); 750 So.2d 339. However, this court will not correct an error patent favorable to the defendant where it is not raised by the State or defendant. Id.
*1108 The third error patent concerns double jeopardy. This court has not recognized the violation of a defendant's double jeopardy rights as error patent in a published opinion. However, in State v. Ashford, unpub., 90-0301 (La.App. 4 Cir. 5/16/91); 579 So.2d 532, this court reviewed a double jeopardy issue as an error patent. The defendant in Ashford had been convicted of armed robbery and attempted first degree murder. Citing a footnote in State ex rel. Adams v. Butler, 89-1692 (La.1990); 558 So.2d 552, for the proposition that a double jeopardy issue is an error patent, this court concluded that the defendant's double jeopardy rights had been violated and vacated defendant's conviction and sentence for attempted first degree murder. Adams concerned a defendant who had pleaded guilty to attempted first degree murder and armed robbery, and who raised a double jeopardy challenge on application for post conviction relief. The Louisiana Supreme Court in Adams cited U.S. v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), for the conclusion that a defendant's guilty pleas did not foreclose his double jeopardy challenge, "because the convictions for attempted first degree murder and the underlying felony of armed robbery constitute a violation of double jeopardy apparent on the face of the record." (emphasis added). Adams, supra at 553, n. 1.[1] Thus, this court will review the double jeopardy issue as an error patent.
Defendant's prosecutions both for possession of cocaine with the intent to distribute pursuant to LSA-R.S. 40:967(C) and, pursuant to LSA-R.S. 14:95(E), for possession of a firearm while in the possession of the same cocaine, upon which the prosecution and conviction for violation of LSA-R.S. 40:967(C) was based, violate defendant's rights under the double jeopardy clauses of both the Fifth Amendment to the U.S. Constitution and LSA-Const. art. 1, § 15. State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95); 654 So.2d 809, writ denied, 95-1252 (La.6/30/95); 657 So.2d 1035; State v. Warner, 94-2649 (La.App. 4 Cir. 3/16/95); 653 So.2d 57, writ denied, 95-0943 (La.5/19/95); 654 So.2d 1089; and State v. Sandifer, 95-2226 (La.9/5/96); 679 So.2d 1324.
Therefore, one of defendant's convictions and sentences must be vacated. In Adams, the Louisiana Supreme Court expounded on the proper disposition in a case involving convictions in violation of constitutional prohibitions against double jeopardy. The court concluded that the general rule is to first vacate the conviction and sentence for the less severely punishable offense, and affirm the conviction and sentence for the more severely punishable offense-or vacate that sentence for the more severely punishable offense and remand for re-sentencing. The court stated: "On remand, a trial judge will be able to eliminate the double jeopardy violation and re-sentence a defendant in accordance with the original scheme of punishment without granting a windfall to the defendant." The court recognized that on remand for re-sentencing, the trial court is required to restructure a new sentence that is no more severe than the defendant's original composite sentence, in accordance with North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The court noted, however, that resentencing according to the original sentencing scheme will not be possible in all cases. The court stated that when restructuring the sentence under the general rule is not feasible, courts should have the flexibility to "implement the original sentencing *1109 scheme to the greatest extent possible." The court said that to accomplish this objective, appellate courts should depart from the general rule and affirm the conviction with the more severe actual sentence, even though it may require vacating the conviction for the more severely punishable offense. The court stated that the exception eliminated the double jeopardy violation, "and effectuates the original scheme of punishment to the greatest extent possible, without violating due process or plea bargains conditioned on specific sentences." The court in Adams departed from the general rule, in order to "maintain the original scheme of punishment to the greatest extent possible," and affirmed the conviction and sentence for the more severe actual offense, vacating the conviction and sentence for the more severely punishable offense. Adams, supra at 554.
In the instant case, the less severely punishable offense is the firearms violation, which, pursuant to LSA-R.S. 14:95.1(E), is punishable, on a first offense, as in the instant case, by a fine of not more than ten thousand dollars and imprisonment at hard labor for not less than five nor more than ten years, without the benefit of probation, parole, or suspension of sentence. The more severely punishable offense is the possession with intent to distribute cocaine offense, which, pursuant to LSA-R.S. 40:967(B)(4)(b), is punishable by imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of the sentence being without the benefit of parole, probation or suspension of sentence, and, in addition, at the court's discretion, a fine of not more than fifty thousand dollars.
In the instant case, the trial court sentenced defendant to eight years on each offense, with both sentences to run concurrently. The trial court denied the benefit of probation, parole, or suspension of sentence as to both offenses, when those benefits could be denied only for the first five years as to the sentence under LSAR.S. 40:967(B)(4)(b).[2] If this court were to vacate the conviction and sentence of the less severely punishable offense, the firearm charge, and affirm the conviction and sentence of the more severely punishable offense, the possession with intent to distribute cocaine charge,[3] this court would be granting defendant a windfall, as his eight-year sentence for possession with intent to distribute would be without the benefit of probation, parole or suspension of sentence for only the first five years. Therefore, as in Adams, supra, the court will vacate defendant's conviction and sentence for the more severely punishable offense of possession with intent to distribute cocaine and affirm his conviction and sentence for the less severely punishable offense of possession of a firearm while in possession of cocaine, which sentence is the more severe actual sentence.[4]

ASSIGNMENT OF ERROR
By defendant's sole assignment of error, he argues that the trial court erred in denying his motion to suppress the evidence, because the officers did not have reasonable suspicion to stop him.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 5 (La.7/2/99); 750 So.2d 893, cert. denied, Edwards v. Louisiana, ___ U.S. ___, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. LSA-C.Cr.P. art. 703(D); State v. Jones, 97-2217, *1110 p. 10 (La.App. 4 Cir. 2/24/99); 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99); 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99); 752 So.2d 192.
LSA-C.Cr.P. art. 215.1(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99); 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99); 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99); 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99); 749 So.2d 767. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99); 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99); 752 So.2d 911; State v. Mitchell, 97-2774, p. 9 (La. App. 4 Cir. 2/3/99); 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La. App. 4 Cir. 9/22/99), 753 So.2d 296; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99); 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99); 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99); 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99); 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99); 748 So.2d 1160. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99); 729 So.2d 132, 137.
None of the trial testimony supports a finding that the officers had reasonable suspicion to believe that defendant had committed, was committing, or was about to commit a crime. However, Officer Hite testified at the motion to suppress hearing that Sgt. Gaudet had received information from a reliable confidential informant who had previously provided information leading to the arrests and convictions of persons involved in illicit narcotics trafficking in New Orleans. The informant stated that Ernest Thomas would be selling cocaine from the location of Clio and Baronne Streets and that he was driving a white Pontiac LeMans with a particular license plate number. The officers proceeded to the area but did not see the car described by the informant. They drove around the area and spotted the vehicle described by the informant at Clio and Baronne Streets. Sgt. Gaudet recognized defendant from previous narcotics investigations; and the officers *1111 turned on their flashing lights and stopped defendant's vehicle.
The dispositive issue as to this information is whether or not, considering the totality of the circumstances, the reliable confidential informant's tip, together with the officers' knowledge and observations, the officers had sufficient reasonable suspicion to believe that defendant was committing, had committed, or was about to commit a crime.
In State v. Hathaway, 411 So.2d 1074 (La.1982), police officers received information from a confidential informant who had previously supplied information leading to narcotics arrests and convictions. The officers were told that Joseph Woods, a known drug user, would be delivering a quantity of narcotics to an address in the 1200 block of South White Street. The officers immediately proceeded to the area, and saw Woods talking on a street corner. As Woods walked away, he "was turning around and looking up and down the street, as to determine if anyone was watching his actions." Hathaway, supra at 1076. The officers drove to the 1200 block of South White Street, where Woods was observed talking with another known narcotics user, and Anthony Hathaway. At that point, the officers approached the three men. This court held that the reliable informant's tip, coupled with the officers' observations of Woods walking down the street "in a furtive manner," and his meeting with another known narcotics user, provided reasonable suspicion for an investigatory stop.
In State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98); 705 So.2d 1242, writ denied, 98-0340 (La.3/27/98); 716 So.2d 887, police officers received a tip from a reliable confidential informant that two men identified as "Blue" and "Chris" were selling heroin from 2807 Willow Street, Apartment B. The informant described each seller's clothing. Ten minutes after receiving the tip, the officers went to the address. They observed Blue, whose clothing matched the description of that worn by one of the men, walk out of the apartment onto the porch. Blue saw the unmarked "but well-known" police vehicle, appeared surprised, turned, and went back into the apartment. The officers followed Blue inside to the bathroom where he attempted to flush the contents of his hand down the toilet. The officers retrieved one plastic container with white powder and one piece of plastic containing white powder. The trial court granted the defendants' motion to suppress the evidence, and this court affirmed. This court concluded: "Although these circumstances would have given the officers reasonable suspicion to detain the defendant if he had remained outside, it does not appear that they supplied probable cause to arrest him, which the officers needed to follow him inside the apartment." (Emphasis added.), Blue, supra at 1246.
In State v. Sterling, 94-0794 (La.App. 4 Cir. 7/27/94); 641 So.2d 696, writ denied, 94-2213 (La.11/18/94); 646 So.2d 379, police received information from a reliable confidential informant who had provided information in the past that had led to the arrests of persons engaged in the illegal trafficking of narcotics in New Orleans. The informant stated that Ralph Sterling was supplying drugs on a wholesale level in the Iberville Housing Project. The informant related that Sterling kept the bulk of his drugs at his mother's residence at 2755 Toulouse Street, then transported them in the late afternoon to 1314 Bienville Street, his girlfriend's apartment, which defendant used as a distribution outlet. The informant said that Sterling drove a 1982 tan Crown Victoria, and that he had personally made buys from Sterling within the past seventy-two hours. An officer testified that the Bienville Street location was known to be a "high drug trafficking area." During a surveillance of the Toulouse Street residence, an officer observed a man, later identified as Sterling, leave the residence carrying a brown paper bag. Sterling entered a 1982 tan Ford Crown Victoria and drove into the *1112 project, where he stopped near 1314 Bienville Street. Sterling got out of his vehicle, looked back and forth, reached into the vehicle and picked up the paper bag, and walked to 1314 Bienville Street. He opened the front door with a key, entered the residence, placed the brown paper bag inside, and returned to his vehicle, where police effected an investigatory stop. Prior to the stop, police had determined through computer records that Sterling had prior arrests for narcotics. This court found that the totality of the circumstances warranted a reasonable suspicion of criminal activity, justifying the investigatory stop.
In State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94); 639 So.2d 1239, writ denied, 94-2058 (La.11/11/94); 644 So.2d 391, a reliable confidential informant told police that "Raul" imported cocaine from Florida, stored it at a Bruxelles Street apartment, and sold it from a Lafitte Street address. Police established a surveillance on Bruxelles Street, and observed a Cadillac with Florida license plates drive past the apartment and park around the corner, although there were parking spaces closer to the apartment. Two men exited the Cadillac, one carrying a small garbage bag, and entered the apartment. Fifteen minutes later, the two left and drove to the Lafitte Street address. When the officers observed one of the men place something into the Cadillac's glove compartment, officers approached and made an investigatory stop of the men. This court held that the circumstances warranted a reasonable suspicion of criminal activity. Scull, supra at 1242.
In the instant case, the officers had the information from a reliable informant who had previously provided information leading to narcotics arrests and convictions in New Orleans. Within what apparently was a short time, the officers observed defendant in the car described by the informant, at the location specified by the informant. One officer knew defendant from previous narcotics investigations. What is lacking in the instant case is any indication that defendant was engaged in behavior indicative of criminal activity. He was simply driving his automobile when the officers activated their lights and stopped defendant. Although Sgt. Gaudet did recognize defendant from "previous narcotics investigations," this information does not tip the scales. Considering those facts and circumstances, the officers did not have reasonable suspicion to stop defendant.
However, Officer Hite testified on cross-examination at the motion to suppress hearing that the defendant failed to completely stop at a stop sign. The import of Officer Hite's testimony is that the traffic violation was a wholly independent basis for the stop, meaning that it occurred prior to the point when the officers turned on their flashing lights to pull defendant over. Officer Hite admitted the officers did not ticket defendant for failing to stop, only for driving without a license. Officer Hite also admitted that the arrest report did not mention a traffic violation as the reason for the stop, only the information received from the informant.
The trial court could have accepted Officer Hite's testimony that defendant committed a traffic violation by running a stop sign, and found that this alone would have given the officers lawful cause to stop defendant. State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99); 731 So.2d 319 (the violation of a traffic regulation provides reasonable suspicion to stop a vehicle). Issues of credibility are determined by the trier of fact, and the trial court is the trier of fact at a motion to suppress hearing. State v. Goodman, 99-2352, p. 4 (La.App.10/13/99); 746 So.2d 693, 695.
Even if it is assumed the officers merely used the traffic violation as a pretext to stop defendant, the stop would have been lawful, as pretextual stops were approved by the U.S. Supreme Court in Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The fact that no traffic citation was issued does not preclude a *1113 finding that there was a traffic violation. State v. Kalie, 96-2650 (La.9/19/97); 699 So.2d 879.
Furthermore, assuming the officers believed they had sufficient articulable facts to justify the stop, apart from the traffic violation, and never intended to stop defendant on the basis of the traffic violation, the trial court nonetheless could have found that the infraction provided legal justification for the stop. Kalie, supra at 881 ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action") citing Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), quoting Scott v. U.S., 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978).
Accordingly, Officer Hite's testimony concerning the traffic violation supports the trial court's finding that the officers were justified in stopping the defendant.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence for possession of a firearm while in possession of cocaine is affirmed. Furthermore, defendant's conviction and sentence for possession with intent to distribute cocaine is vacated.
CONVICTION AND SENTENCE AFFIRMED IN PART AND VACATED IN PART.
NOTES
[1] In Broce, the U.S. Supreme Court quoted Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), where the court, although cautioning that it was not holding that a double jeopardy claim may never be waived, held that a defendant's guilty plea does not foreclose a claim that the charge itself, "judged on its face," "is one which the State may not constitutionally prosecute." (emphasis in original)(quoting Menna, 423 at 63, n. 2, 96 S.Ct. at 242, n. 2).
[2] See discussion of the first error patent.
[3] It would be a exercise in futility to vacate the sentence on the possession with intent to distribute charge and remand for re-sentencing, as the trial court would be bound to impose a sentence no more severe than the original sentence.
[4] It would be an exercise in futility to vacate the sentence on the firearm charge and remand for resentencing. See footnote 3.