JAMES F. McKAY III, Judge.
| STATEMENT OF CASE
On January 25, 2010, the State charged the defendant, Michael L. Meyers, with one count of possession with the intent to distribute marijuana, a violation of La. R.S. 40:966(A)(2). The defendant pled not guilty at his arraignment on February 9, 2010. On February 4, 2011, the trial court found probable cause and denied the defendant’s motion to suppress the evidence.
On March 28, 2011, the defendant appeared for trial and pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On that same date, the defendant waived any sentencing delays and was sentenced to serve ten years at hard labor, suspended, and five years active probation. Also on that date, the trial court granted the defendant’s motion for appeal.
STATEMENT OF FACT
At approximately 4:11 p.m. on January 20, 2010, Officer Kenneth Spooner and his partner, Officer Nicholas Williams, investigated a drug-related violation at Elysian Fields Avenue at North Claiborne Avenue. The officers were driving on Elysian Fields Avenue, approaching North Claiborne Avenue, when they observed a blue Honda, “about a car length” in front of them, make a right turn onto North 12Claiborne Avenue without signaling. When the officers observed the traffic violation, it was raining, and “there was a lot of traffic.” The officers immediately turned on the police unit’s lights and siren, and followed the Honda. They finally caught up to the vehicle close to St. Bernard Avenue and North Claiborne Avenue and ... “due to the weather, [they] finally stopped the vehicle at Columbus and North Claiborne.” The Honda traveled “about four to five blocks” before it eventually stopped.
The officers exited their car and approached the Honda. Officer Spooner approached the passenger side of the vehicle, and Officer Williams approached the driver’s side. Officer Williams advised the *941 defendant of the traffic violation he observed, and asked for his driver’s license, registration, and proof of insurance. The defendant became “a little nervous and had trouble locating all of the information.” At that point, the officers noticed that the registration and proof of insurance were “sitting on the passenger side seat.” Officer Spooner let a few moments pass before he advised the defendant that some of the documentation he was looking for was on the passenger seat.
While the defendant was looking for the requested documentation, Officer Spooner “smelled a strong aroma of marijuana coming from the interior of the vehicle.” Due to the smell of the marijuana, the officers asked the defendant to step out of his vehicle, and Officer Williams read the defendant his Miranda[1] rights. Officer Williams asked the defendant if he had any marijuana in his vehicle, and he replied that he did not have marijuana in the vehicle, but that “he had been smoking cigarettes and that is probably what we, [the officers], were |ssmelling.” Thereafter, Officer Spooner issued a citation to the defendant for the traffic violation, and the defendant signed the citation.
Officer Spooner testified that because he and Officer Williams “believed that there was marijuana in the vehicle,” they “scanned the vehicle, but did not see anything with our eyes.” The officers asked the defendant if they could search his car, and the defendant told them no, he would not allow the officers to search his car. Because the smell from the car that the officers believed to be marijuana “was very, very, prominent, very strong,” the officers called for a K-9 narcotic unit to search the car.
When the K-9 unit arrived, the dog, Boris, “hit on the back seat of the vehicle.” The officers pulled the back seat down and allowed the dog to re-enter the vehicle. The dog then “hit on a black duffle bag that contained three large clear plastic bags containing two individually wrapped packages of marijuana each.” The marijuana was field tested and tested positive. The amount of marijuana recovered was close to five pounds.
Officer Spooner testified that the entire process took about “an hour, hour to two hours,” and that the drug dog was out within “at least 20, 30 minutes.”
On cross-examination, Officer Spooner confirmed that the only reason the defendant’s vehicle was pulled over was because of a traffic violation. Officer Spooner denied that someone communicated with him to stop the defendant’s vehicle for other reasons. Officer Spooner clarified that the marijuana seized consisted of three sets of two individually wrapped plastic bags of marijuana wrapped inside of one large plastic bag. The bags were sealed, but Officer Spooner could not testify as to whether they were sealed “airtight.” No other marijuana was found inside of the vehicle.
|4Officer Spooner confirmed that both he and Officer Williams witnessed the defendant commit a traffic violation. At the time of the traffic violation, the officers were in the right-hand lane of Elysian Fields Avenue, and then made a right-hand turn onto North Claiborne Avenue. One vehicle separated the defendant’s car from the police unit. However, the vehicle separating the defendant’s car from the police unit did not obstruct their view of the defendant committing a traffic violation.
Officer Spooner testified that initially the police unit was one car behind the defendant’s car. Thereafter, the police *942 unit got four or five blocks behind the defendant’s car. Officer Spooner stated: “because of wet weather we didn’t want to speed. Despite the traffic, ultimately, the officers stopped the defendant about three, four minutes after he turned onto North Claiborne Avenue.
Officer Spooner also testified that “Maybe a few minutes after” they stopped the defendant; Officer Joseph Davis arrived on the scene to assist Officers Spoon-er and Williams. Officer Spooner denied that he had communicated with Officer Davis while the stop was taking place. Rather, Officer Davis showed up at the scene on his own volition.
Officer Spooner confirmed that it took about twenty minutes for the K-9 to arrive. Officer Spooner conferred that the police report, which indicated that the officers stopped the defendant at 4:11 p.m., was the most accurate account of when the officers actually stopped the defendant.
Officer Spooner was the officer who field tested the marijuana. To do so, Officer Spooner penetrated the plastic bags containing the marijuana; there were no observable holes in the bags before he opened them.
I-Agent Mark Nicholson, an agent with the Drug Enforcement Administration (“DEA”), testified that on January 20, 2010, he was involved in the surveillance of the areas surrounding 803 Elysian Fields Avenue. In connection with his surveillance of the area, he observed the defendant leave the location at approximately 4:05 p.m. Agent Nicholson then communicated with the New Orleans Police Department (“NOPD”), and requested assistance from them to conduct an investigatory stop of the defendant.
Agent Nicholson testified that he was in the immediate area where Officers Spoon-er and Williams stopped the defendant, but he did not initiate any enforcement or traffic stop at that time. Agent Nicholson also testified that he saw the officers in the marked units [sic] activate the blue lights in the area of North Claiborne Avenue but that he stayed in the perimeter. He stated that he “didn’t actually put eyes on the stop as it was happening.” Agent Nicholson explained:
[E]arlier in the month [of January, 2010], I received information from the Georgia Bureau of Investigation that they initiated a Title 3 investigation on some marijuana traffickers from Georgia, at which time, on this particular day, Georgia Bureau of Investigation called me and advised that a Mr. Paul Katoushia, who lived at that Elysian Fields address that we established surveillance on, would be arriving at that residence with a quantity of marijuana.
On that same day they intercepted some calls from a potential customer who indicated that they would be coming over to 803 Elysian Fields.
A short time later, my partner and I observed Mr. Meyers pull up in a four-door blue Honda, go inside the residence, meet with Mr. Paul Katoushia at the door before they went inside.
Agent Nicholson spoke with Detective Ricky Jackson with the NOPD and requested that a police unit stop the defendant’s vehicle. Agent Nicholson couldn’t | Rrecall whether he had any communication with Officer Spooner, but testified that “[i]t is possible that I had the phone number from Detective Jackson.” Agent Nicholson went on to testify “I’m sure I had some communication with him [Officer Spooner] to put him on the exact car, unless I was talking to Ricky Jackson at the time.”
The information Agent Nicholson relayed to the NOPD “was that there was a Title 3 investigation and we were request- *943 mg a walled off stop of the vehicle, based on what we observed on surveillance, which was indicative of drug trafficking.”
On cross-examination, Agent Nicholson confirmed that he did not see the traffic violation.
Officer Alex Sider, assigned to the K-9 unit for the NOPD and the handler of the K-9 dog Boris, testified that on January 20, 2010, at around 6:00 p.m., he was involved in a K-9 search of the defendant’s vehicle. Officers Spooner and Williams requested K-9 assistance. Once Officer Sider arrived on the scene, he had his dog do a sniff search of the car.
On cross-examination, Officer Sider testified that the dog made a positive hit during its sniff search of the defendant’s car. The positive hit was towards the rear of the vehicle.
The defendant testified that at around 4 p.m., on January 20, 2010, he was arrested near the intersection of Columbus Street and North Claiborne Avenue. Prior to his arrest, he had been traveling river-bound on Elysian Fields Avenue. He came to a green light at the corner of Elysian Fields Avenue and North Claiborne Avenue, “signaled right” and made a right-hand turn onto North Claiborne Avenue. The defendant testified that there was no traffic when he made |7the right-hand turn onto North Claiborne Avenue, and that “[t]here were no cars behind me.” The defendant also testified that it was close to ten blocks after he turned right onto North Claiborne Avenue, that he was stopped by the police. On cross-examination, the defendant testified that he lives at 280 Arthur Road in Lake Arthur, Louisiana. He stated that within a six-month time frame of his arrest, that he traveled a route that took him from Elysian Fields Avenue to North Claiborne Avenue probably a few times a week. The defendant confirmed that, on the day he was arrested, there was no traffic in the area of Elysian Fields Avenue and North Claiborne Avenue at 4 p.m. on a Wednesday.
The defendant, stated that “I always look in my rear view mirror,” and that he did not see a police unit behind him when he turned right onto North Claiborne Avenue. He testified that he had traveled “probably a minute-and-a-half, two minutes” after turning right onto North Claiborne Avenue before he noticed a police unit “probably a block behind.” On redirect, the defendant clarified that there was other traffic at the intersection.
ERRORS PATENT
No errors patent appear on the face of the record.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence because the officers lacked reasonable suspicion to conduct an investigatory stop of the defendant. The defendant’s argument on this point is misguided.
| ^Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Thomas, 99-2219, p. 8 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, 1109 (citing, State v. Edwards, 97-1797, p. 5 (La.7/2/99), 750 So.2d 893, 901). At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D). Trial courts are vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; see also, Thomas, 99-2219, p. 8, 764 So.2d at 1110. (“A trial court’s ruling on a motion to suppress the evi *944 dence is entitled to great weight because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony.”).
La.C.Cr.P. art. 215.1(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. Thomas, 99-2219, p. 8, 764 So.2d at 1110.
La. R.S. 32:104(B) that:
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given ^continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
As a general matter, “the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). This standard is purely objective, and does not take into account the subjective beliefs or expectations of the detaining officer. Id. At 1174. Although they may serve, and may often appear intended to serve, as a prelude to an investigation of a much more serious offense, even relatively minor traffic violations can provide an objective basis for lawfully detaining a vehicle and its occupants. State v. Waters, 2000-0356, p. 4 (La.3/12/01), 780 So.2d 1053,1056.
In the subject case, Officer Spoon-er testified that he witnessed the defendant’s car make a right-hand turn onto Claiborne without first signaling, a violation of La. R.S. 32:104. Officer Spooner issued a citation to the defendant for his traffic infraction. Although the defendant later testified that he properly signaled when he turned onto North Claiborne Avenue, the trial court did not find his testimony credible.
The defendant argues that, regardless of Officer Spooner’s stated reasons for stopping him, the record clearly establishes that Officer Spooner was untruthful when he testified that the only reason he stopped the defendant was due to the defendant’s improper turn onto North Claiborne Avenue. The defendant argues that the testimony of Agent Nicholson, a Drug Enforcement Agent for the United States, establishes that Officer Spooner actually stopped the defendant because Agent Nicholson specifically requested that he stop the defendant’s vehicle based on what Agent Nicholson had observed while conducting surveillance of the |,ndefendant. The defendant therefore argues that because Officers Spooner and Williams stopped the defendant in response to Agent Nicholson’s specific request, and not in response to any traffic infraction the defendant may have committed, the officers lacked the requisite reasonable suspicion needed to lawfully stop the defendant.
The record does not establish that Officer Spooner was untruthful when he testified that he stopped the defendant due to a traffic violation. Agent Nicholson testified that just before the defendant’s vehicle was stopped by Officers Spooner and Williams, he requested that NOPD stop the defendant. Agent Nicholson testified *945 that he made his request with Detective Ricky Jackson. Agent Nicholson could not recall whether he made his request, or otherwise communicated with, any other officer, namely, Officer Spooner.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the defendant argues that the defendant’s motion to suppress should have been granted because the evidence seized is “fruit of the poisonous tree,” where a Terry stop detention of the defendant turned into a defacto arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In support of his argument, the defendant argues that he was stopped for almost two hours while Officers Spooner and Williams waited for a K-9 unit to arrive at the scene to conduct a sniff search of the defendant’s vehicle. The defendant argues that a two hour wait for the arrival of a canine unit was excessive, thereby turning the officers’ Terry stop into a defacto arrest. La.C.Cr.P. art. 215.1(D) provides, in pertinent part:
| ^During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.
Here, Officer Spooner testified that when he and Officer Williams initially stopped the defendant, they noticed the defendant acting nervously. Particularly, the officers observed the defendant nervously fumble for his vehicle’s registration and proof of insurance, when both documents were sitting on the passenger seat, clearly visible to the officers and the defendant. In addition, Officer Spooner testified that when he and Officer Williams first arrived at the defendant’s car, they “smelled a strong aroma of marijuana coming from the interior of the vehicle.” Officer Spooner asked the defendant if he could search the defendant’s vehicle, and the defendant responded that he would not allow the officers to search his vehicle for marijuana. Officer Spooner testified that because the smell from the car that he and Officer Williams believed to be marijuana “was very, very, prominent, very strong,” they elected to call for a K-9 unit to investigate the car.
Based on the foregoing, the officers had reasonable suspicion of additional criminal activity to justify the enlargement of the scope of their investigation and to request the aid they sought via a K-9 unit. See, State v. Lopez, 2000-0562, pp. 3-4 (La.10/30/00), 772 So.2d 90, 93. The arrival of a drug-detection dog on the scene within minutes of the stop afforded the officer the opportunity to “pursuef] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant.” State v. Kinchen, 2011-9 (La.App. 3 Cir. 6/8/11), 71 So.3d 344, 351; See also Lopez, 2000-0562, p. 4, 772 So.2d at 93, quoting, United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 121568, 1575, 84 L.Ed.2d 605 (1985). The dog’s sniffing around the exterior of the vehicle did not itself constitute a search, and its subsequent alert, consistent with respondent’s extreme . nervousness, gave the officers probable cause to search for contraband. Lopez, 2000-0562, p. 4, 772 So.2d at 93.
Although the defendant argues that waiting nearly two hours for the canine unit to arrive was unreasonable, thereby converting a lawful Terry stop into a de facto arrest, defendant presents no relevant law in support of this argument. Indeed, in State v. Miller, 2000-1657 *946 (La.10/26/01), 798 So.2d 947, the Louisiana Supreme Court held that the length of the defendant’s detention, fifty-three minutes from the initial, routine traffic stop until the canine alerted on the defendant’s trunk, did not convert the encounter into a defacto arrest.
In addition, the officers’ search of the defendant’s car was conducted pursuant to the automobile exception of the warrant requirement. Courts have consistently held that the odor of marijuana emanating from a car provides officers with sufficient probable cause to conduct warrantless searches of the automobile in question. See, State v. Mitchell, 2010-334, p. 8 (La.App. 5 Cir. 10/26/10), 52 So.3d 155, 160. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle without more. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam).
Probable cause combined with the inherent mobility of a vehicle, carrying the risk of loss evidence, underpins the automobile exception and allows police to conduct an immediate warrantless search as thoroughly as a magistrate could authorize. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999). State v. Tatum, 466 So.2d 29, 31 (1985).
| i.sThe Louisiana Supreme Court has recognized that the inherent mobility of-a vehicle and the risk of losing evidence because of this mobility have prompted courts to allow police to conduct an immediate warrantless search with probable cause. State v. Long, 03-2592, p. 10 (La.9/9/04), 884 So.2d 1176, 1183 n. 6. The Louisiana Supreme Court has also recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant. State v. Guzman, 362 So.2d 744, 749, (La.1978); See State v. Thompson, 02-0333 p. 10 (La.4/9/03), 842 So.2d 330, 337-38. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Tatum, Supra.
This assignment of error has no merit.
CONCLUSION
Accordingly, based on the above and foregoing we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).