617 So.2d 18 (1993)
STATE of Louisiana
v.
Thomas W. JOHNSON.
No. 90-KA-2026.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Harry F. Connick, Dist. Atty., David L. Arena, Asst. Dist. Atty., New Orleans, for plaintiff.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The defendant, Thomas W. Johnson, was charged by bill of information with possession of cocaine with intent to distribute, a violation of R.S. 40:967 A. After a hearing, the trial court denied the defendant's motion to suppress evidence. The defendant pled guilty as charged, under State v. *19 Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his motion to suppress evidence. The trial court then sentenced the defendant to five years at hard labor, suspended, and placed him on three years active probation. The defendant's probation was subsequently revoked and his sentence made executory. The defendant now appeals.
The record reflects that on May 20, 1986 NOPD Officers Phillips and Marti met with a confidential informant regarding alleged drug sales from 1231 S. Rampart Street. According to the C.I., a person known as Tom was selling drugs from this location. At about 11:00 p.m., the police established a surveillance of this address. Upon their arrival, the police observed a subject later identified as the defendant sitting on the porch with a second subject later identified as Sidney Clay.
Soon an unknown black male walked up to the defendant and handed him an unknown amount of money. The defendant, in return, removed a matchbox from the pouch of the sweatshirt he was wearing. The defendant next removed an object from the matchbox and handed it to the unknown subject. This subject then walked away. Shortly thereafter, an unknown black female walked up to the defendant and made a similar exchange with the defendant.
During this surveillance the police received more information from the informant, including a detailed clothing description. The police also learned of the existence of a blue station wagon located under the ramp of the near-by Mississippi River Bridge. This vehicle was the alleged stash location of the drugs allegedly being sold by the defendant.
Shortly after obtaining the new information, the defendant gave Clay the matchbox. Clay then entered the blue station wagon. Soon another black female walked up to Clay, who directed her to the porch of the Rampart Street location. There the subject gave some money to the defendant and was then sent back to Clay, where she received a small object. Later two unknown males went directly to the house on Rampart Street. The defendant answered the door and directed them to the station wagon where they also received a similar object from Clay.
After observing the above transactions, Officers Marti and Phillips called in Officers Ronquillo and Selby for assistance. The police then arrested Clay, seizing several plastic wrappers containing cocaine. During this arrest, Clay stated that the cocaine belonged to the defendant. The police then went to the front and side doors of the Rampart Street house. Officer Ronquillo knocked on the side door, which was answered by a third subject. Upon the officer identifying himself as a policeman, the subject attempted to close the door in his face. Officer Ronquillo then forced his way into the residence as the subject ran to the front of the house screaming that it was the police. He followed the subject to the bedroom where the defendant was sleeping in a bed with a female subject known as Dolores Kennedy. Officer Ronquillo then seized a pistol from the nightstand by the defendant and handcuffed the defendant. In the meantime, Officers Selby and Marti had gained entrance through the front door. In the search incidental to the arrest, the officers also discovered and seized the matchbox from the pouch of the sweatshirt the defendant was wearing. The matchbox contained seven packets of white powder. The officers also seized three hundred dollars and a briefcase from near the bed. The defendant was then advised of his rights and transported to Central Lockup.
The defendant, Dolores Kennedy, and her son Gerald Kennedy all testified at the suppression hearing. They testified that the police forced their way in and tore up the whole bedroom and closet in their search. They further testified that the police took twelve hundred dollars and the pistol from the briefcase. Gerald Kennedy and the defendant testified that the defendant was made to put on the sweatshirt. Gerald and Dolores Kennedy both testified that they were kept in the front room but could see what was happening in the bedroom by the reflection in the dresser mirror. *20 Dolores Kennedy and the defendant both testified that the matchbox was on the nightstand, not in the defendant's sweatshirt pouch.
A review of the record for patent errors reveals that there were none.
The defendant's sole assignment of error is the trial court's denial of his motion to suppress evidence. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Constitution, Amendment 4; Louisiana Constitution Article 1 § 5; C.Cr.P. Article 162; State v. Brady, 585 So.2d 524 (La. 1991). A recognized exception to the warrant requirement for entry into a building is a quick search of the premises to determine the presence of persons in need, the presence of a perpetrator who might still remain on the premises, or to prevent the destruction of evidence. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); United States v. Rubin, 474 F.2d 262 (3rd Cir.1974) cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writs denied, 531 So.2d 764 (La.1988).
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1 § 5.
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that without those exceptional circumstances would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that cause injury to the officers and the public, and the destruction of evidence.
State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
Exceptions to the warrant requirement are carefully drawn and there must be a showing by those who seek exception that the exigencies of the situation make the search imperative. State v. Welch, 449 So.2d 468 (La.1984). The burden is on the government to show that the search falls within one of the exceptional situations. Vail v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Tatum, 466 So.2d 29 (La.1985).
In State v. Woods, 591 So.2d 1323 (La. App. 4th Cir.1991), like the present case, officers received information that a person was selling cocaine from a particular residence. The officers' surveillance corroborated this information. The officers arrested the suspect outside the house, then went inside the house "to secure it." The trial court suppressed evidence seized from inside the residence finding that the officers had more than three days to obtain a search warrant and "there was no evidence which substantiates a reasonable belief that any other person was in the residence." This Court granted writs and reversed the decision of the trial court. Reasoning that the defendant's brother (who the officers had seen one week earlier inside the residence) might be in the residence and that crack cocaine found inside the residence could easily have been destroyed.
In Roebuck, police officers received a tip that Roebuck and his girlfriend were using a certain motel room to store large amounts of drugs which were then taken to other locations for sale. The officers conducted surveillance for several days observing activities consistent with drug trafficking. Officers saw Roebuck and his girlfriend leaving the apartment carrying a brown paper bag. The suspects were stopped and arrested and the officers then entered the room "to secure it" while awaiting the issuance of the warrant. No contraband was discovered in plain view and the room was not searched until after the warrant was issued.
On review of the trial court's denial of their motion to suppress the evidence, the defendants argued that the officers' warrantless *21 entry tainted the subsequent search of the room pursuant to the warrant. This Court disagreed, noting that the officers were justified in entering the room because of the possibility that another person may have been in the room, may have seen Roebuck and his girlfriend being arrested, and may have attempted to leave through a back door with the remaining drugs. This Court came to this conclusion even though the officers could give no basis for the belief that another person was in inside the motel room.
In United States v. Rubin, 474 F.2d at 268-269, the court listed circumstances which might lead police officers to reasonably conclude that evidence would be destroyed or removed before they could secure a search warrant:
1) The degree of urgency involved and the amount of time necessary to obtain a warrant;
2) Reasonable belief that the contraband is about to be removed;
3) The possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;
4) Information indicating the possessors of the contraband were aware that the police were on their trail; and
5) The ready destruction of the contraband and the knowledge and efforts to dispose of narcotics and escape are characteristic behavior of persons engaged in narcotics traffic.
In the instant case, the police corroborated information from a confidential informant with their own surveillance. They thus had probable cause to believe that both Clay and the defendant were distributing narcotics. The defendant argues that, although the police knew of a second subject inside the residence, their information indicated that the drugs were stashed in the station wagon, not in the residence. The defendant thus contends that the police lacked any articulable knowledge of any exigent circumstances justifying their warrantless entry into the S. Rampart Street address. The defendant then concludes that the search made pursuant to this illegal arrest was therefore also illegal. This argument fails to take into account that the initial information given to the police indicated drug dealing out of the residence, and that the follow-up surveillance indicated the defendant was, at the least, receiving money for the drugs at the residence.
The State maintains that the defendant's arrest was properly made as time did not allow for getting either an arrest warrant or a search warrant. Sidney Clay's arrest would have tipped off the defendant that he, too, was observed in drug trafficking. The police thus had to respond quickly to prevent the defendant's escape. The pistol and matchbox were retrieved pursuant to the arrest. Even if the drug money was confiscated from a briefcase not in the defendant's immediate control, a fact contested by the arresting officers, the presence of others in the house made it essential for the police to seize or secure this evidence which might otherwise have been concealed or removed.
The officers thus had both probable cause and exigent circumstances to arrest the defendant and seize the pistol, drugs and money which were retrieved. There was no error in the trial court's denial of the motion to suppress.
Accordingly defendant's conviction and sentence are affirmed.
AFFIRMED.