833 So.2d 418 (2002)
STATE of Louisiana
v.
Kennedy D. KIRK.
No. 2000-KA-0190.
Court of Appeal of Louisiana, Fourth Circuit.
November 13, 2002.
*419 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).

ON REMAND FROM THE SUPREME COURT OF LOUISIANA
MICHAEL E. KIRBY, Judge.
STATEMENT OF THE CASE:
This case comes before us on remand from the Supreme Court of the United States. See, Kennedy D. Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). In our original opinion we held that the police officers did not need a warrant to enter defendant's apartment because they had obtained sufficient probable cause, through surveillance, to make a warrantless arrest of him. The contraband for which he was prosecuted was recovered from his person, not the apartment, during a search incident to his warrantless arrest. Therefore we did not consider his contention that the officers lacked exigent circumstances to enter his apartment.
The Louisiana Supreme Court denied writs over Chief Justice Calogero's dissent to the effect that there is a fine line at the entrance of the home and, as such, the police need both probable cause to either arrest or search and exigent circumstances. The U.S. Supreme court agreed with Chief Justice Calogero, reversed our judgment that exigent circumstances were not required to justify the officers' conduct and remanded the case to us for further proceedings consistent with its decision.

FACTS:
The facts recited below are taken from our original opinion:
Detective John Brunet testified at trial that he and his partner, Detective Derrick Brumfield, went to the 2300 block of Washington Avenue on March 5, 1998, around 5:00 p.m. to observe the apartment in question. At the motion to suppress hearing, the officer testified that they went to the location in response to a citizen complaint. Once there, they saw a person approach the apartment and exchange currency for a small object. They continued watching the apartment and saw a total of four apparent narcotics transactions. Brunet saw the defendant complete a transaction. After the fourth transaction, Brunet ordered that the buyer to "taken down." Detective Steven Gaudet and his partner stopped the man. Because the stop took place within a block of the apartment, Brunet feared that evidence would be destroyed and ordered that the apartment be entered. Upon the officers' entering, the defendant sat on a *420 gun. Another weapon was on a table to the defendant's left. Both defendants were "secured." Officers obtained a search warrant. After the warrant was obtained, a search of the defendant revealed fifty-eight pieces of crack cocaine and $238.00. The officers seized a cooking tube from the apartment.

EXIGENT CIRCUMSTANCES:
We start this analysis from the well established proposition that a warrantless search is presumptively unreasonable under the Fourth Amendment, unless it falls within a specific exception to the warrant requirement. See Roska v. Peterson, 304 F.3d 982, 989 (C.A.10 (Utah)). According to Roska, supra, exigent circumstances arise when
(1) the law enforcement officers ... have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search [is not] motivated by an intent to arrest and seize evidence, and (3) there [is] some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be search.

United States v. Anderson, 981 F.2d 1560, 1567 (10th Cir.1992) (alterations in original). The government bears the burden of proving exigency. United States v. Wicks, 995 F.2d 964, 970 (10th Cir.1993). The government's burden is "Particularly heavy where the police seek to enter a suspect's home." Anderson, 981 F.2d at 1567 (quoting United States v. Maez, 872 F.2d 1444, 1452 (10th Cir.1989).) In evaluating whether exigent circumstances existed. We examine the circumstances "as they would have appeared to prudent, cautious, and trained officers." United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir.1998). This exception is narrow, and must be "jealously and carefully drawn." Id.

The United States Supreme Court has defined exigent circumstances as "a plausible claim of specially pressing or urgent law enforcement need." See Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

DISCUSSION:
In applying the above principles to the facts of this case we find there were insufficient exigent circumstances to justify the warrantless entry. The only reason given by the officer in support of the decision to enter the apartment was because the "take down" of the fourth purchases occurred within the same block as the apartment. However, there is no testimony or other evidence in the record from which we can conclude that the occupants of the apartment were aware of the police surveillance or of the "take down" nearby. There is no evidence that anyone else discovered the police presence who could notify the occupants of the surveillance or "take down." There is no evidence that a crowd was gathering as a result of the police activities. In the absence of a showing that the officers possessed specific and articulable facts, together with the rational inferences from those facts, we cannot find that their belief that exigent circumstances existed to enter the apartment without a warrant was a reasonable one. See U.S. v. Wilson, 306 F.3d 231, 238, (5th Cir.(Tex.) 2002). The evidence seized during that warrantless entry, therefore, should have been suppressed.

CONCLUSION:
For the above and foregoing reasons we reverse the defendant's conviction and remand for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
BYRNES, C.J., dissents with reasons.
*421 BYRNES, C.J., DISSENTS WITH REASONS:
I respectfully dissent based on my conclusion that the majority erred in reversing the defendant Kennedy D. Kirk's conviction and sentence. The majority reversed the trial court's denial of the motion to suppress the evidence including two weapons, money, a purse, letters, drug paraphernalia, and contraband found on Kirk and Paul Cook when they and the residence were searched.
Detective John Brunet testified at the hearing on the motion to suppress held on June 1, 1998 and at the trial on September 22, 1998. Based on an anonymous tip to the task force, Detective Brunet and his partner, Detective Brumfield, set up a surveillance of the apartment building in March 1998. At the motion hearing, Detective Brunet testified that:
During that surveillance, we had a high foot traffic going back and forth from the apartment. We could observe from our location U.S. currency being exchanged for small packages of some sort.
At trial, Detective Brunet stated that:
We observed both subjects [the defendants/occupants] at periodic times. Paul Cook and Kennedy Kirk was one of the two subjects. At that time, we didn't know their last names. All we knew were the first names.
After they saw four transactions, the police stopped a subject [Leslie Butler] who had approached the apartment and had exchanged currency for a small object. At the motion hearing, the detective stated:
Once it was confirmed that crack cocaine was being sold from that location, we secured the premises due to this exigent circumstances and obtained a search warrant for the target location.
The detective said that the drug transactions took place in front of the door of the apartment. At trial the detective related that he personally saw Kirk and Cook at different times exchange a small object for currency at the front door of the apartment. At the motion hearing, the detective stated that: "we thought the information would get back to them [the occupants] and they would destroy the contraband." When the police entered the apartment, Kirk stepped backward and sat on a chair where the officers saw a weapon. The officers could observe the weapon before Kirk sat on it to conceal it, and they saw another weapon located on the table. The detective testified:
Like I said, we secured the apartment based on the exigent circumstances. And at that time, we frisk-searched the subjects for weapons upon entering the apartment. The subject, Kennedy Kirk, was in possession of a plasticit looked more like a medicine bottle. I think he had like 53, 58 pieces, something like that of crack cocaine on his person.
Sergeant Steven Gaudet frisk-searched Kennedy Kirk. Detective Brunet frisk-searched Paul Cook. Kirk and Cook were placed in handcuffs. Thereafter, Detective Brunet obtained a warrant to search the apartment. Later, it was determined that Cook had 19 rocks in one of his front pockets. The defendant Kirk testified that the apartment was rented by Cook, and that Kirk received mail at the apartment. The State provided evidence of letters to Kirk at the apartment address.

Standard of Review of a Motion to Suppress
The appellate court reviews the district court's findings of fact on a motion to suppress under a clearly erroneous standard, and will review the district court's ultimate determination of Fourth Amendment reasonableness de novo. U.S. v. *422 Seals, 987 F.2d 1102 (5 Cir.1993), cert. denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. United States v. O'Keefe, 128 F.3d 885 (5 Cir. 1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998). An appellate court reviews the district court's determinations of reasonable suspicion and probable cause de novo. U.S. v. Green, 111 F.3d 515 (7 Cir.1997), cert. denied sub nom. Green v. U.S., 522 U.S. 973, 118 S.Ct. 427, 139 L.Ed.2d 328 (1997). Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698 (La.App. 1 Cir.1993), writ denied 629 So.2d 1138 (La.1993). In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence from the motion hearing. It may also consider the evidence presented at trial. State v. Nogess, 98-0670, p. 1 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
In the present case, the United States Supreme Court reversed "the Court of Appeal's judgment that exigent circumstance were not required to justify the officers' conduct, and remand for further proceedings...." Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (6/24/02). The United States Supreme Court did not express an opinion on the argument that any Fourth Amendment violation was cured because the police had an "independent source" for the recovered evidence. Id The United States Supreme Court implied that probable cause existed where it remanded the case only on the issue of whether exigent circumstances were present.
I conclude that probable cause and exigent circumstances existed for the officers to lawfully enter and secure the apartment.

Probable Cause to Arrest
La.C.Cr.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or in close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;
It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. State v. Gates, 24,995 (La.App. 2 Cir. 1/19/94), 630 So.2d 1345, writ denied sub nom. Gates v. Jones, 94-0640 (La.6/17/94), 638 So.2d 1091. An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. Rodriguez v. Deen, 33,308 (La.App. 2 Cir. 5/10/00), 759 So.2d 1032, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1049. For an arrest, the law does not require that "reasonable cause to believe" be established by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person's guilt. La.C.Cr.P. art. 213; State v. Weinberg, 364 So.2d 964 La.1978). The standard *423 of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Id.
Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. State v. Franklin, 598 So.2d 1147 (La.App. 1 Cir.1992), writ denied, 604 So.2d 1317 (La.1992). The reputation of the area is an articulable fact upon which a police officer may legitimately rely. Id. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or a preponderance standard demands. State v. Green, 98-1021 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, writ denied, 96-2610 (La.6/20/97), 695 So.2d 1348. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. Deference should be given to the experience of the police who were present at the time of the incident. Id. The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. Police are not required to arrest an individual at the point at which probable cause for arrest arises. State v. Coleman, 412 So.2d 532 (La.1982).
In State v. Zayas, 93-1473 (La.App. 4 Cir. 5/26/94), 637 So.2d 1237, the police officer had probable cause to arrest the defendant and codefendant charged with possession of cocaine. The search of the co-defendant's bag of potato chips was lawful, where the police had information from a confidential informant about the defendant, his operating procedure, and address where drug trafficking had occurred a week earlier, and where the defendant and co-defendant appeared to be carrying out a drug transaction similar to the transaction observed a week before the arrest.
In State v. Shelton, 96-2322 (La.App. 4 Cir. 10/30/96), 682 So.2d 338, the police officers who observed the defendant and another individual conduct hand transactions in an area known for frequent drug activity and observed the defendant place a clear plastic bag in his front shirt pocket when he saw the officer, had probable cause to make a warrantless arrest of the defendant and search the defendant pursuant to the arrest. U.S.C. Const.Amend. 4; La.C.Cr.P. art. 213.
In State v. Davis, 612 So.2d 1052 (La. App. 4 Cir.1993), an officer who was in an area known for drug trafficking, saw a defendant showing a matchbox to another person. The officer had probable cause to arrest the defendant where the officer knew that matchboxes are commonly used to carry cocaine.
In the present case, information was relayed to two police detectives by a task force who received an anonymous a tip of drug activity at a certain address. The officers set up a surveillance in front of the apartment. Based on their experience, the officers had justifiable reason to believe that the occupants were involved in drug activity because the officers saw the occupants engage in four different transactions with other individuals. Under the totality of circumstances, it was reasonable for the officers to believe that the occupants had committed a felony when they observed the occupants conducting hand-to-hand drug transactions. Pursuant to La.C.Cr.P. art. 213, the officers had probable cause to arrest Kirk. Once Kirk could be lawfully *424 arrested, the police could search him. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wilson, 467 So.2d 503 (La.1985), U.S. cert. denied, 474 U.S. 911, 1027, 106 S.Ct. 281, 585, 88 L.Ed.2d 246, 567 (1985); State v. Tasby, 26,103 (La.App. 2 Cir. 6/24/94), 639 So.2d 469, writ denied 94-2256 (La.1/13/95), 648 So.2d 1336.
In the present case, the officers had probable cause to arrest Kirk. To legally enter the apartment and secure it while waiting for a warrant, the officers required exigent circumstances as well as probable cause.

Exigent Circumstances
In State v. Johnson, 617 So.2d 18, 20 (La.App. 4 Cir.1993), this court discussed the applicability of the "exigent circumstances" warrant exception:
... Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Constitution, Amendment 4; Louisiana Constitution Article 1 § 5; C.Cr.P. Article 162; State v. Brady, 585 So.2d 524 (La.1991). A recognized exception to the warrant requirement for entry into a building is a quick search of the premises to determine the presence of persons in need, the presence of a perpetrator who might still remain on the premises, or to prevent the destruction of evidence. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409 [83 L.Ed.2d 246] (1984); United States v. Rubin, 474 F.2d 262 (3rd Cir.1974 [1973]) cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writs denied, 531 So.2d 764 (1988).
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1 § 5.
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that without those exceptional circumstances would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence.
State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Page, 95-2401, p. 10, (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, writ denied 96-2352 (La.2/21/97), 688 So.2d 522; State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993), writ denied 629 So.2d 1126, and writ denied 629 So.2d 1140 (La. 1993).
The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In United States v. Rubin, 474 F.2d 262, 268-269 (3 Cir. (Pa.) 1973), the federal court listed circumstances that might lead police officers to reasonably conclude that evidence would be destroyed or removed before they could secure a search warrant:
(1) The degree of urgency involved and the amount of time necessary to obtain a warrant;
(2) A reasonable belief that the contraband is about to be removed;

*425 (3) The possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;
(4) Information indicating the possessors of the contraband were aware that the police were on their trail; and
(5) The ready destruction of the contraband and the knowledge and efforts to dispose of narcotics and escape are characteristic behavior of persons engaged in narcotics traffic.
In State v. Woods, 591 So.2d 1323 (La. App. 4 Cir.1991), this Court found that exigent circumstances existed where the defendant's brother might be in the residence and that crack cocaine found inside the residence easily could have been destroyed.
In Johnson, supra, 617 So.2d 18 (La. App. 4 Cir.1993), the officers received information that drugs were being sold from a certain address. After the officers established a surveillance, they observed what appeared to be drug sales. The officers arrested the companion at the car and then secured the house while waiting for the issuance of a warrant for the house. This court found that the officers had probable cause to believe that the house contained drugs, and the arrest of the defendant's companion, of which the defendant would be aware, allowed the officers to enter the house to secure it.
In Roebuck, supra, from a tip that drugs were sold from a motel room by Roebuck and his girlfriend, the police officers conducted a surveillance for several days and observed activities consistent with drug trafficking. Officers saw Roebuck and his girlfriend leaving the apartment carrying a brown paper bag. The suspects were stopped and arrested. The officers then entered the room "to secure it" while awaiting the issuance of the warrant. This Court rejected the defendants' argument that the officers' warrantless entry tainted the subsequent search of the room pursuant to a warrant. This Court noted that the officers were justified in entering the room because of the possibility that another person may have been in the room, may have seen Roebuck and his girlfriend being arrested, and may have attempted to leave through a back door with the remaining drugs. This Court found exigent circumstances even though the officers could give no basis for the belief that another person was inside the motel room.
In State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, the officers were justified in knocking on a motel room door to investigate an anonymous tip about drugs being present in the room because reasonable suspicion of criminal activity was not required. Knocking on the door did not constitute an investigatory stop. Id. There is no compulsion, force, or coercion involved when the door is opened in response to the knock, and it is considered to be a consent of the occupant to confront the caller. Id. When the officers observed drug paraphernalia in plain view, they had probable cause to arrest the defendant. When the door was opened, the Fifth Circuit found that: "there were exigent circumstances because there was the possibility that the occupant could have escaped during the time which would have been required to prepare an affidavit, locate a magistrate, and obtain an arrest and/or search warrant." Id. at 576.
In the present case, the police saw several drug transactions transpire in front of the residence. The police were aware that the occupants/sellers remained in the apartment after a buyer left and was stopped down the block. After the police stopped the buyer down the block with drugs, the officers had probable cause to believe that the house contained drugs. Where drugs were involved, exigent circumstances existed for the detectives to *426 enter and secure the apartment because the officers thought that information could get back to the occupants and they could destroy the contraband under the totality of circumstances.

Inevitable Discovery
The officers inevitably would have discovered the evidence on lawful grounds. See State v. Ballon, 97-2036 (La.App. 4 Cir. 11/12/97), 703 So.2d 130, writ not considered, 97-3114 (La.2/13/98), 706 So.2d 987. As this Court stated in State v. Knapper, 626 So.2d 395, 396 (La.App. 4 Cir.1993), writ denied, 93-2950 (La.1/28/94), 630 So.2d 798:
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the "inevitable discovery" doctrine, holding that evidence found as a result of a violation of a defendant's constitutional rights, would be admissible "[I]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered." The so-called "inevitable discovery doctrine" has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510 (La.1984), cert. den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4 Cir.1986).
In the present case, Detective Brunet testified that the drugs were not found on Kirk and Cook until after the search warrant was obtained. The detective answered the prosecutor's questions as follows:
Q. While you are checking Paul Cook for weapons who was searching Kennedy Kirk?
A. Frisk search by Sergeant Gaudet and other members of the task force.
Q. Did you see anything seized from the person of Kennedy Kirk at that time?
A. Not that I recall.
Q. Okay. So, he didn't seize anything off the actual person of him?
A. Nope. He was seated on the weapon.
Q. Did you see anyone remove any drugs from the defendant at that time?
A. Not that I can recall.
Q. Did you seize any drugs from Paul Cook at that time?
A. No. I didn't seize any drugs but like I said, I frisk searched him for weapons and he had what I thought was a vial at that time but it ended up being a pill bottle.
Q. You didn't seize the pill bottle?
A. I didn't have a need to immediately.
Q. You went to get a search warrant?
A. Yes.
Q. Once you got the search warrant and return, what did you do in respect to the apartment? Was the search done at that time after the warrant was received?
A. I think Mr. Cook had nineteen pieces of crack cocaine in his front pant pocket. Mr. Kirk had fifty eight pieces of crack cocaine which was inside of his front pant, inside of his underwear.
Even if the officers had seized the drugs from Kirk and Cook before obtaining the warrant, inevitably the police would have found the evidence in a lawful search of the apartment as well as pursuant to a lawful arrest of Kirk and Cook. Before entering the apartment, the detectives had probable cause to arrest the occupants. They could fully search the occupants pursuant to valid arrests when the officers entered the apartment under exigent circumstances.
*427 Accordingly, I would affirm the defendant Kennedy Kirk's conviction and sentence as amended in this Court's original opinion, i.e., with a denial of the benefit of parole, probation, or suspension of sentence on the last ten years of the sentence.