# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-500

## STATE OF LOUISIANA

## VERSUS

## ROBERT LEE

**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## THIRTEENTH JUDICIAL DISTRICT COURT
## PARISH OF EVANGELINE, DOCKET NO. 88004-FA
## HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Trent Brignac, District Attorney
Julhelene E. Jackson, Assistant District Attorney
P.O. Drawer 780
Ville Platte, LA  70586
(337) 363-3438
**ATTORNEY FOR APPELLEE**
    State of Louisiana

Edward J. Marquet
Louisiana Appellate Project
P.O. Box 53733
Lafayette, LA  70505
(337) 237-6841
**ATTORNEY FOR DEFENDANT/APPELLANT**
    Robert Lee

**COOKS, Judge.**

In this criminal appeal, Defendant asserts ineffective assistance of counsel for failure to file a motion to suppress the fruits of a warrantless search of the residence where he was detained. Defendant was eventually found guilty of the charges of creation or operation of a clandestine lab for the unlawful manufacture of a controlled dangerous substance and public intimidation.

### FACTS AND PROCEDURAL HISTORY

On February 12, 2011, Captain Shawn Eckhart, with criminal investigations for the Evangeline Parish Sheriff's Department, received "several different phone calls from anonymous callers" that led him to investigate Defendant, Robert Lee. He became aware that Defendant purchased pseudoephedrine, "a known precursor for methamphetamine," on February 11, 2012. Captain Eckhart and Detective Joey Pelequin went to Turkey Creek, Louisiana. They also received a tip that Defendant might be in a Ford F-150 truck. The officers located the vehicle parked at a residence next door to the home of Defendant's father. The truck belonged to Kimberly Campbell.

The officers left the residence, and when they returned, the truck was gone. They went to a residence on Crooked Creek Parkway owned by Randy Cole around midnight to 1:00 a.m. and found the vehicle parked there. They knocked on the door of the residence, and Defendant answered. Captain Eckhart identified Defendant at trial.

Captain Eckhart's investigation revealed other occupants of the house had also purchased pseudoephedrine within twenty-four hours of this incident. It was believed the suspects would be making methamphetamine, but the officers did not know prior to arrival at Cole's residence if the suspects would make it there, at Defendant's residence, or elsewhere.

2

Defendant "seemed a little bit uncooperative with the questions" the officers asked. "He attempted to shut the door on [them] several times and Detective Pelequin noticed that he was wearing a batting glove and he also had what appeared to be a sheath protruding from the side of his belt with – a knife." Captain Eckhart noted the "shake and bake" process produces heat.

Captain Eckhart became aware of an odor "consistent with a meth lab, or that of the metallic smell." After seeing the knife sheath and noticing the odor, they conducted a safety pat down of Defendant, who was uncooperative with simple questions and had slurred speech. Captain Eckhart went to the rear of the residence to secure the back door, which Detective Pelequin noticed was open. He saw "a small, green in color Sprite like bottle sitting on the back concrete area of the back door," about two or three feet from the door. Its contents were bubbling, and Captain Eckhart suspected the "shake and bake" method of cooking methamphetamine was taking place.

Detective Pelequin yelled into the residence for the owner, and he came downstairs. Captain Eckhart searched the house and found Campbell, Victoria Shaw, and Cole, the residence's owner. In the kitchen, he found blenders, hydrogen peroxide, Drano, salt, and coffee filters. The blender contained a white powder residue.

The officers searched the home because they knew four people were involved, and they only had Defendant in their presence. If the others inside were making methamphetamine and "were to put that bottle on the floor and go hide somewhere else it's a very, very good possibility that one of those bottles may burst and cause flames." The search was conducted for the safety of the investigators as well as the occupants of the trailer. The officers did not find any other methamphetamine production taking place.

Detective Pelequin confirmed Captain Eckhart's testimony. They saw the white pickup truck owned by Campbell at a residence "right at midnight." On February 12, 2011, the department "had received numerous anonymous tips from different people about the subjects conducting their self [sic] in this illegal manner" at "a trailer house in Turkey Creek belonging to [Defendant]." They left the residence and arrived at 5799 Crooked Creek Parkway, Defendant's residence, where they had been advised people were cooking methamphetamine. The white pickup was present.

Detective Pelequin and Captain Eckhart knocked on the door of the residence; they did not have a search warrant and normally did not for a "knock and talk." Defendant answered the door and would not let them inside until the owner, Cole, agreed. Defendant tried to close the door; the officers wanted him to leave it open for safety reasons. They observed a knife sheath hanging from Defendant's belt; Defendant reached for it when Detective Pelequin asked him about it. Detective Pelequin state he grabbed Defendant and did a weapons pat down.

When they removed Defendant from the doorway to do the pat down, Detective Pelequin could see "straight through the house" and observed an open sliding glass door. He smelled a "pungent chemical odor . . . a burning odor[.]" Detective Pelequin and Captain Eckhart "were unsure if there was anybody else, maybe somebody fled the scene, or was back there, so [Captain Eckhart] then proceeded around the residence to make sure there were no dangers there." Captain Eckhart "found a green bottle that was bubbling and in [Detective Pelequin's] training, that was consistent with that of a shake and bake meth lab[.]" They were "unsure of anyone else being in the residence, or any other labs cooking inside the residence, so under the exited [sic] circumstances [they] entered the

4

residence to clear it for [their] safety and whoever is in the residence safety." Defendant was detained.

Captain Eckhart testified he attended classes on drug recognition and clandestine laboratories pertaining to methamphetamine labs in 2005. He had investigated approximately ten methamphetamine lab cases in Evangeline Parish at the time of trial. He described the odor associated with a methamphetamine lab "as a heating metal, metallic type of smell."

Captain Eckhart explained the easiest type of clandestine methamphetamine lab involves the "shake and bake method":

> With the shake and bake method usually takes some sort of sports drink bottle and they use that, and they actually mix their ingredients in that bottle, and then they will shake the contents of that bottle to get an end result of methamphetamine or crystal meth after a filtering process.

This is the "cooking" of the methamphetamine. Likewise, Detective Pelequin attended a methamphetamine lab investigations course in which he learned:

> . . . to identify the different precursors, and what their dangers were and basically you know, how to act when you got on the scene and what to do with the different things, who to contact to bring in to clean up the mess, and just what to look for, as far as for being evidence in a meth lab.

Defendant was charged with creation or operation of a clandestine lab for the unlawful manufacture of a controlled dangerous substance, a violation of La.R.S. 40:983(A)(1); resisting an officer, a violation of La.R.S. 14:108; simple criminal damage to property over $500, a violation of La.R.S. 14:56; and public intimidation, a violation of La.R.S. 14:122. All violations allegedly occurred on February 12, 2011. An amended bill of information, filed August 8, 2012, charged Defendant with creation or operation of a clandestine lab and public intimidation.

5

Counsel filed a motion in limine which led to a ruling from the trial court that limited the testimony of Captain Eckhart.[1] The jury found Defendant guilty of both charges. The trial court sentenced him to ten years at hard labor for the creation of a clandestine lab and to four years at hard labor for public intimidation. The sentences are to run concurrently. Defendant now claims his counsel was ineffective because he did not file a motion to suppress the fruits of the warrantless search of the residence where he was detained.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In his lone assignment of error, Defendant asserts his counsel was ineffective because he failed to file a motion to suppress the fruits of the warrantless search of Cole's residence. He maintains the filing of a motion to suppress would have resulted in his acquittal of these charges.

The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, an appellate court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective counsel on appeal, Defendant must satisfy a two-part test. He must first show counsel's performance was deficient and next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

---

[1] The trial court's ruling on the motion in limine prohibited Captain Eckhart from saying he saw a chemical reaction taking place in the bottle he found in back of the residence. The ruling limited him to saying he saw something bubbling in the bottle.

6

We find the record here is sufficient to determine whether the failure to file a motion to suppress constituted ineffective assistance of counsel. To determine if Defendant's counsel was ineffective in this case, we must first ascertain whether the warrantless search was unconstitutional.

Defendant contends an anonymous tip has the lowest indicia of credibility for a search warrant because the tipster is not identified, and there is no relationship to the accused to provide credibility. The record contains no details of the anonymous tip. Rather, Captain Eckhart testified "[e]arlier that day [he] received personally several different phone calls from anonymous callers[.]" He had "received basically the same information where [Defendant] was put onto a precursor watch[.]" On the same day as the anonymous tip, Captain Eckhart "received a hit from the precursor watch indicating that [Defendant] had purchased a known precursor for methamphetamine." This amounted to independent, unrelated information that verified the anonymous tip. Therefore, we find the anonymous tip has no influence on whether counsel was ineffective for failing to file a motion to suppress.

The objective of a "knock and talk" is to discover information; a police officer on such a discovery mission "may observe items in plain view and smell odors coming from the house." *Florida v. Jardines*, __ U.S. __, 133 S.Ct. 1409, 1424 (2013) (citations omitted). "Louisiana jurisprudence allows the 'knock and talk' approach of police." *State v. Warren*, 05-2248, p. 6 (La. 2/22/07), 949 So.2d 1215, 1222.

> Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer therefore needs both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into a private premises. *State v. Talbert,* 449 So.2d 446 (La.1984); *State v. Hathaway,* 411 So.2d 1074 (La.1982).

*State v. Brisban*, 00-3437, p. 5 (La. 2/26/02), 809 So.2d 923, 927.

In *Warren*, 949 So.2d 1215, an officer performed a "knock and talk" at a hotel room after observing suspicious behavior. When the defendant answered the door, officers smelled the strong odor of marijuana smoke and saw a small plastic baggie of what appeared to be marijuana on the bed inside the room. Officers arrested the defendant, patted him down, handcuffed him, and conducted a protective sweep of the room for other occupants, weapons, and evidence that could be destroyed by the defendant. They opened a large duffel bag on the bed and found a large quantity of marijuana. The defendant told officers two others were at the motel bar and would return soon.

The trial court determined the officers reasonably conducted the "knock and talk," and they had probable cause to search the room without a warrant and arrest the defendant. However, the trial court found no exigent circumstances to justify the warrantless search of the interior of the bag. Thus, the trial court suppressed evidence of the seized marijuana. This court agreed because the bag was not within the immediate area and control of the defendant.

The Louisiana Supreme Court, however, found the warrantless search was objectively reasonable. In a "knock and talk," an answered knock represents "a consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved." *Warren*, 949 at 1222.

The court noted the general requirement of a warrant to enter a home but cited the "exigent circumstances" rule of *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003), *cert. denied*, 540 U.S. 841, 124 S.Ct. 110 (2003): "warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." *Warren*, 949 So.2d at 1224. Law enforcement's reasonable fear for the safety of others in the premises constitutes an exigent circumstance. *Id*.

8

However, probable cause must still exist to justify entry into a residence based on exigent circumstances. The probable cause determination "must be made from the totality of the circumstances, based on the objective facts known to the officer at the time." *Id.* (citing *United States v. Ferguson,* 8 F.3d 385 (6th Cir. 1993), *cert. denied*, 513 U.S. 828, 115 S.Ct. 97 (1994)). The *Warren* court considered the recent drug activity in the area, the suspicious activities the officer observed, the results of the defendant's criminal history search, and the possibility the two other occupants of the room could return at any moment, and it found the search of the bag permissible based on exigent circumstances. The court ultimately reversed the trial court and this court and held the motion to suppress was erroneously granted.

The defendant in *State v. Lewis*, 04-20 (La.App. 3 Cir. 6/2/04), 878 So.2d 758, appealed his first degree murder conviction on grounds that officers had no probable cause to enter the residence where he was found or to search the residence after consent from its owner. This court noted:

> Exigent circumstances include situations where law enforcement officers have reasonable grounds to protect the lives of others, the entry and search is not motivated by an intent to arrest someone or to seize evidence, and there is a reasonable basis to associate an emergency with the area to be entered and searched. *State v. Kirk,* 00-190 (La.App. 4 Cir. 11/13/02), 833 So.2d 418, *writ denied* 02-3079 (La.5/9/03), 843 So.2d 394, (citing *Roska v. Peterson,* 304 F.3d 982 (10th Cir.2002), *abrogated in part on other grounds,* 328 F.3d 1230 (10th Cir.2003)). As stated in *Kirk:* "The United States Supreme Court has defined exigent circumstances as 'a plausible claim of specially pressing or urgent law enforcement need.' *See Illinois v. McArthur,* 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)." *Id.* at 420.

*Lewis*, 878 So.2d at 763. This court agreed with the trial court that officers had probable cause and exigent circumstances for entry into the residence where officers reasonably believed in the immediate need to protect the life of a missing victim who may have been held there.

We find the officers in the present case had authority to conduct a "knock and talk" meeting. Once Defendant opened the door and they smelled what they believed to be the odor of methamphetamine production, they gained probable cause to determine whether that activity was actually taking place. Additionally, they already were aware Defendant had purchased known precursors for the manufacture of methamphetamine. Defendant was wearing a batting glove that would protect his hand from the heat produced from the "shake and bake" method of production. He also was armed with a knife.

Captain Eckhart went to the rear of the residence to secure the open back door they had observed during the "knock and talk." We find that was a reasonable and necessary action because the officers knew there were others inside the residence; it needed to be secured. Captain Eckhart saw the bubbling soda bottle, which he knew from experience and training could indicate the production of methamphetamine at that very moment. As Captain Eckhart explained, he did not know if others inside the residence might be doing the very same thing that would risk a fire that would endanger the lives of those inside and the lives of the officers. Thus, this factual scenario presented exigent circumstances that arose when Captain Eckhart observed the bottle and justifies the warrantless search.

Because the factual basis requires the denial of a motion to suppress, we cannot say counsel was ineffective by failing to file such a motion, and its filing would have led to Defendant's acquittal. Thus, Defendant was not prejudiced by counsel's representation. This assignment of error lacks merit.

## DECREE

For the foregoing reasons, Defendant has made no showing trial counsel was ineffective by failing to file a motion to suppress evidence seized in the warrantless search. Thus, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**